ORDER
GRITT, JUDGE:
An application of claimant, Stephanie Birchfield, for an award under the West Virginia Crime Victims Compensation Act, was filed February 14, 1996. The report of the Claim Investigator, filed March 10,1997, recommended that no award be granted, to which the claimant timely objected. An Order was issued on May 2, 1997, confirming the Investigator’s recommendation and denying the claim, to which the claimant’s request for hearing was filed May 21, 1997. This matter came on for hearing February 21, 2002, the claimant appearing by counsel, Michael A. Esposito, Attorney at Law, and the State of West Virginia by counsel, Joy M. Bolling, Assistant Attorney General.
The claimant’s 42-year-old husband, Jerome Birchfield, was the victim of criminal conduct in Charleston, Kanawha County, on or about January 26, 1996. The victim was fatally shot in the back with a pistol by the offender, Jerome *406 Wallace, who was later charged with first-degree murder. He pleaded guilty to second-degree murder and faces a possible sentence of 20 years in prison.
This claim was initially denied on the basis of contributory misconduct on the part of the victim. Nothing adduced at the hearing convinces this Court otherwise. It is clear that Jerome Birchfield was the victim of a cowardly and vicious crime. The Court is sympathetic to the claimant Stephanie Birchfield and the family of the victim. However, the Court is constrained by the evidence that the claimant was not an innocent victim of crime.
Stephanie Birchfield testified at the hearing of this matter regarding the circumstances surrounding the shooting of her husband. On January 26, 1996, Mr. Birchfield drove to Mrs. Birchfield’s place of employment and picked her up so they could go home together for lunch. However, they first had to pick up Mrs. Birchfield’s friend whom Mr. Birchfield drove to three different places in town that were all some distance from one another before dropping her off (Transcript, page 8). Once they got home, Mrs. Birchfield began working on a leaking pipe under the sink. She realized that it had to be replaced. According to the claimant, her husband went to Lowe’s Hardware Store on Patrick Street to get a piece of pipe (Transcript, page 8). Unfortunately, this was the last time she saw her husband alive. Mrs. Birchfield stated that her husband did not mention that he was going anywhere else (Transcript, page 8). Further, she testified that he knew that she had to be back to work soon and would not do anything to make her late. Mrs. Birchfield waited for a long time for Mr. Birchfield and became concerned (Transcript, page 8). Later that day, detectives from the Charleston Police Department came to her house and informed Mrs. Birchfield that her husband had been shot in the back, but was still alive. However, once she arrived at the hospital she was informed that Mr. Birchfield had died from his injuries (Transcript, page 9).
Mrs. Birchfield had not been present at the scene of the crime. Her testimony at the hearing was based mostly upon statements made to her by Sylvester Harris, who was at the scene (Transcript, page 9). According to Mrs. Birchfield, Sylvester Harris had asked Mr. Birchfield for a ride, which he received. The victim drove Mr. Harris to Second Avenue in Charleston, where, according to the claimant, Mr. Harris was wanting to buy some drugs (Transcript, page 10). Mrs. Birchfield stated that Mr. Harris told her that he called two other men over to her husband’s car and that they got in the car (Transcript, page 14). According to the claimant, Mr. Birchfield made it clear to the men that he was not going to go along with the drug deal (Transcript, page 14). Mr. Birchfield exited his vehicle and told the two strangers in the back seat to get out. An argument ensued (Transcript, page 14). It is unclear from the testimony exactly when, or why, Mr. Birchfield was shot, but it was near this point in time.
Mrs. Birchfield testified that her husband was not going to buy drugs (Transcript, page 9). She stated that she was aware that he had done cocaine on *407 one occasion, but it was months before this incident (Transcript, page 11). She also testified that Mr. Harris did not mention to her that her husband was there to buy drugs and that she believes that Mr. Harris was honest about this (Transcript, page 12). However, she acknowledged that Sylvester Harris was a known drug user. (Transcript, page 13).
Officer Richard H. Vinyard of the Charleston Police Department testified on behalf of the respondent that he was initially dispatched by Metro to the scene (Transcript, page 18). When he arrived, the paramedics were working on Mr. Birchfield, who had been shot in the back. The victim was lying on the ground on the Exxon parking lot at the corner of Florida Street and Kanawha Boulevard (Transcript, page 18). According to Officer Vinyard, the victim told the paramedics that four black males had shot him, but he did not state why, nor did he offer any other information (Transcript, page 18). The victim was alert and talking at the scene. Officer Vinyard thought at that time that he could get a statement from him at the hospital, but unfortunately the victim died. (Transcript, page 19). The police, including Officer Vinyard, searched Cabell School and Second Avenue for any evidence related to the shooting, but found nothing (Transcript, page 19). Officer Vinyard was unable to testify as to what exactly happened to cause this shooting (Transcript, page 21). However, he did state that the area where the victim was located is known as a very bad area for drug use and sales. This includes the Florida Street area and Cabell School (Transcript, page 22).
W. Va. Code § 14-2A-3(1) defines “Contributory Misconduct” as:
“any conduct of the claimant, or of the victim through whom the claimant claims an award, that is unlawful or intentionally tortious and that, without regard to the conduct’s proximity in time or space to the criminally injurious conduct has causal relationship to the criminally injurious conduct that is the basis of the claim and shall also include the voluntary intoxication of the claimant, either by the consumption of alcohol or the use of any controlled substance when the intoxication has a causal connection or relationship to the injury sustained.”
In the present claim, the Claim Investigator’s opinion was that Mr. Birchfield was guilty of contributory misconduct. Therefore, it is the claimant’s burden to prove that the victim, Jerome Birchfield, was an innocent victim of crime. It is the Court’s opinion that the claimant did not meet her burden. First, the victim tested positive for cocaine and opiates at the time of his death. Cocaine is an illegal substance, and unless he was on a prescribed medication which contained an opiate, Mr. Birchfield had two illegal substances in his body at the time of his death. Secondly, Mr. Birchfield was in a section of Charleston widely known for drug transactions and activity. Thirdly, the claimant presented no eyewitness testimony to rebut the police report nor to rebut an eyewitness account indicating that Mr. Birchfield was involved in a drug transaction when he was shot.
*408 The Court is constrained by the evidence to stand by its previous ruling; therefore, this claim must be, and is hereby, denied.